McFarland, J.,
delivered the opinion of the Court.
The complainants in this bill allege the following state of facts: That they are the children of Robert D. Carr, who died at his residence in the State of Arkansas, about the month of June, 1859, leaving a last will and testament, of which his widow, Elizabeth A. Carr, became executrix. That said testator left a widow and the complainants and three other children, his only heirs at law and legatees.
*86 One of said children, James A. Carr, died in 1864, intestate, unmarried, and without issue, leaving his said mother, Elizabeth A. Carr, and his brothers and sisters his sole heirs at law and distributees. The testator left two other children, who do not join in the bill, nor are they made parties, because, as the bill as sumes, their right to relief is barred by the statute of limitations. That said widow, Elizabeth A., died in November, 1869, without having married again.
The bill further shows that on the 2d of April, 1860, W. Lowe became the “special administrator” of the estate of the said Eobert D. Carr in Tennessee, and a copy of the record of his appointment and bond, from the County Court of Eobertson county, is exhibited with the bill.
The bill further charges that said administrator did not render to the said county court an inventory of the effects received by him, nor did lie make a regular' or legal settlement with said court or clerk, or in an other way; nor did he legally or properly account for or pay over the moneys received by him, but that he wrote out a pretended settlement in the absence of the complainants, or any one authorized to act for them, and got the receipt of W. M. Carr (one of the sons ■ of testator who does not join in the bill) thereto, which he acknowledged before the Clerk of said County Court of Eobertson, and that said County Court ordered that said purported settlement and receipt be recorded. This is also exhibited with the bill. Complainants charge that they had no notice of said settlement, that neither said County Court nor *87 the Clerk thereof examined, allowed, or made, said settlement, and that no papers or vouchers were filed by said administrator. That said administrator received $13,135.06 with which he charged himself in said settlement, and a debt of over $4,000 with which he did not charge himself. That he did not charge himself with interest on the fund, although the same had been in his hands for some years. The bill further points out several credits allowed the administrator in said settlement, the correctness of which is denied, and further, that said administrator paid over to W. M. Carr $6,218.00 of uncurrent funds, which were in reality a part of the assets of said estate, and that this was a part of the fund for which the receipt' aforesaid was given. The bill denies the authority of W. M. Carr to receive or receipt for said funds for them.
It appears from the copy of the settlement aforesaid and the receipt exhibited with the bill, that ~W. M. Carr professed to act in executing this receipt as the attorney of Elizabeth A. Carr, the executrix, upon an order from her, signed and dated Mississippi county, Arkansas, August 19, 1866.
The bill prays for an account and settlement, and that the personal representatives of said W. Lowe, who has in the meantime died, be compelled to pay over the amount due them.
To this bill the Chancellor sustained a demurrer, and upon this several questions are made. And first, it is argued that the complainants do not show that they have any right to or interest in the fund sought *88 to be recovered, because the bill does not allege that the will of Robert D. Carr has ever been proven in Tennessee, or that a copy thereof has been certified in accordance with the act of Congress and filed with the clerk of any court in this State, as provided in sections of the Code 2182, 2184. In fact, the bill does not distinctly show that the will was ever proven in Arkansas. The estate of said Carr in Tennessee consisted of personalty, and by well-settled principles the laws of Arkansas must determine who are entitled to the surplus after the payment of debts here.
However, it seems to be well settled that a person claiming under a will executed and proven in one State, can not sue for or claim the legacy in another State unless the will is proven in the latter State, or unless it is authorized by some statute of the latter State. This was so held in the case of Kerr v. Moon, in United States Supreme Court, 12 Wheaton, 565, and in Richards v. Dortch, 8 Mass., 506, and by other authorities. The sections of our Code before referred to, provide the manner in which foreign wills may be made effectual in this State, but the bill does not- show that either of these modes has been complied with. The result is that the will is not to be considered as in force in Tennessee, and therefore, so far as the ..complainants predicate their right to maintain this bill as legatees under said will, that right cannot be recognized. What then is the attitude of the complainants? How is the estate of said Carr in Tennessee to be disposed of? For defendants, it is maintained that as complainants do not establish *89 their rights as legatees, they have no rights at all, and their hill must be dismissed. On the other hand, it seems manifest that unless the will be proven in Tennessee, or the statute before referred to be complied with, the estate here must be disposed of as if said Carr had died intestate. The case before referred to, of Kerr v. Moon, was a bill filed to establish the right of complainants to certain land warrants, or the lands upon which they had been located in Ohio, and there being no local statute authorizing it, it was held that their title under the will could not' be maintained, and that the same would be the result as to personal estate: but the complainants in the cause were also the heirs at law of the said A. Moon, under whose will they claimed.
The court thereupon say: “considering as we must in the present state of the cause, that A. Moon died intestate as to these lands, they of course descend to the persons who are entitled to the same according to the laws of Ohio, and this is a fit subject to be decided by the court below, to which the cause must be remanded for further proceedings.”
So, then, as we cannot regard any will of Robt. D. Carr as in force in Tennessee, so far as now appears, the result is that his estate here must be held subject to the law as if he had died intestate, and as the complainants show that they are his children, they may maintain the bill as distributees. Whether in the event the will be hereafter proven or recorded in this State, the complainants will then' be compelled to abandon their claim as distributees, and *90 take only such interest as the will may give them, is a question we need not now determine. Until some one interested in the question shall see proper to have the will recorded here in accordance with the statute, we must proceed as if there were no will in existence. It is true that the complainants in the bill style themselves legatees, and not distributees, but their rights are to be determined upon the facts stated, and not upon particular words used.
Are the complainants then entitled to an account of this estate? This is resisted upon the ground that the order appointing said Lowe administrator specified his duties as such, and that he has complied with that order. The order of the said county court appointing Lowe administrator is as follows: “It appearing to the court here that Robert D. Carr, late of this county, who removed to and died last year in Mississippi county, Arkansas, where he made his last will and testament leaving his widow, Elizabeth, the executrix of his estate, yet has means in this State to be administered/’ (and then follows an enumeration of certain debts due said Carr from various persons in this State, a portion of whom it is shown resided in Robertson county). The order then proceeds: “It is therefore, on application of W. Lowe, ordered that he be, and he is hereby, appointed special administrator of said Robert D. Carr, deceased, in the case referred to, to collect the uncollected debts specified, and any others due said deceased in Tennessee, and to pay over/ to Mrs. Elizabeth Carr, the executrix in Arkansas, with no powers or liabilities given or attached beyond these ■ *91 specified and referred to, except that he can retain for any amount due, also fees of collecting and costs of administration and reasonable commissions for his services.”
The bond is conditional in accordance with the above order.
Upon this the argument for the defendant is, that as by the order appointing said Lowe administrator, he was directed to pay the assets over to Mrs. Elizabeth Carr, it results that complainants cannot be entitled to these assets, and that this was further ratified by said county court ordering his settlement, which shows that he had paid the assets over to an attorney of Mrs. Elizabeth Carr, to be recorded.
This brings up the question as to the powers and jurisdiction of the county court in such cases.
The Code, sec. 2201, and following, provides for the appointment of administrators by the county court, first of persons who had resided in the State; and section 2203 provides for the appointment of administrators upon the estate of any person who resided at the time of his death in any other State or territory of the Union, or in a foreign country, where the deceased had goods, chatties, or assets, or estate real or personal, or had debts owing to him, or was a party to a suit in this State, and in this section the counties in which the administration shall in such cases be granted are designated. Then follow various other provisions in regard to suits on the bonds of personal representatives, and in .regard to the duties and liabilities of such personal representatives, and the mode of proceeding in certain cases, which are not necessary to be *92 enumerated; it -will be found, however, that these provisions apply alike to the personal representatives of persons residing at the time of their death in other States, as to the representatives of persons residing in this State at their death; in fact, no distinction whatever seems to be made as to the powers, duties and obligations of the two classes of administrators, but the same provisions apply to both alike.
The argument is made that an administration granted here upon a non-resident decedent’s estate, is, or may be, a special or limited administration, or, as it is sometimes termed, an ancillary administration, and that the powers, duties, and obligations of such administrators in respect to the assets here are by law different from those of other administrators, or, at all events, that those powers and duties may, by the court making the appointment, be limited and made different from the powers and duties that by law attach in ordinary cases. We see no authority for this distinction, but on the contrary, it appears clear from the positive provisions of our statute before referred to, as well as from the general principles of law, that upon the appointment here of an administrator upon the estate of a non-resident decedent, he becomes invested with the same powers, and subject to the same liabilities, in respect to the assets here, as other administrators, and that the law governing their powers and liabilities, is precisely the same in the two classes of cases; or in other words, the term special or ancillary administration, as sometimes used in our books, has not the signification contended for.
*93 This view is maintained by the case of Keaton’s distributees v. Campbell, 2 Hum., 224. This was a case where one John Keaton died in Missouri, leaving some personal property in that State, and some in this State. W. Keaton administered in Tennessee and gave bond and security. He also procured letters of administration in Missouri and gave bond there. He brought a part of the property obtained in Missouri to this State, and the question was whether the securities upon his bond in this State were liable for the conversion of this property obtained in Missouri. This court held that they were not. That the trusts were distinct and independent of each other; and on this subject Judge Reese, in delivering the opinion of the court, quotes with approbation the language of Justice Story in Harvey v. Richards, 1 Mason’s Rep., as follows: “I have no objection to the use of the terms principal and ancillary, as indicating a distinction in fact as to the object of the different administrations, but we should guard ourselves against the conclusion that therefore there is a distinction in law as to the right of the parties. There is no magic in words. Each of these administrations may be considered as a principal one with reference to the limits of its exclusive authority, and each under circumstances might justly be deemed an ancillary administration.”
It is argued in this cause that the county courts, in matters of this sort, are courts not of limited but of original and exclusive jurisdiction, and that their judgments are binding and concluding upon the parties until regularly reversed by an appellate court: that *94 their judgments can not be attached collaterally. This is undoubtedly true as to all judgments rendered in matters where the court is vested by law with jurisdiction to render such judgments. The question here is as to the effect of that part of the order of the County Court of Robertson, above quoted, which provides that W. Lowe, administrator of the estate, shall fay the surplus over to Mrs. Elizabeth A. Carr. Is this to be allowed the effect of a judicial determination of the question, that Mrs. Elizabeth A. Carr is entitled to this fund, and that these complainants are not? We think clearly not; for while it is true that the court did have power to appoint said administrator, and its action in that respect cannot be collaterally attached, yet they certainly had no authority to declare the powers, duties, and liabilities, of said administrator, or to adjudge in advance who should, or who should not, be entitled to the fund. Upon the appointment of said administrator,- the law in clear and definite terms fixes his duties and liabilities; the court had no power to alter or change them, and certainly could not adjudge, as between Mrs. Elizabeth A. Carr and these complainants, who should be entitled to the fund, as neither party had notice of the proceeding, nor was the court in any way vested with jurisdiction to determine that question. To show how palpably the court exceeded its powers, it is only necessary to notice the fact, that by the terms of this order, said Lowe is ordered to pay over all the money except only what may be due him, and for costs, etc., to Mrs. Carr, utterly ignoring the rights of all creditors *95 in this State except himself. By no principle or authority could this be done. True, it does not appear there were any creditors here, but surely the court could not know this in advance; and so far as ap■pears, the court made this order without any legal evidence of the right of Mrs. Carr to the fund. We conclude, therefore, that the right of these complainants, as distributees of their father’s estate, to their share of this fund, is not to be regarded as adjudged against them by this order.
Are they then entitled to this account under the law? Shall the administrator in Tennessee be held accountable to the parties by law entitled to the fund, or to the personal representative in Arkansas?
Section 2311 of the Code provides that “no executor or administrator shall take, hold, or retain in his hands, more of the deceased’s estate than amounts to his necessary charges and disbursements, and such debts as he shall legally pay within two years after administration granted; but all such estates so remaining shall, immediately after the expiration of two years, be divided and paid over to the person or persons to whom the same may be due by law or by the will of the deceased.”
As we have before seen, all these provisions of the Code apply to personal representatives in general, and the language of this section, “no executor or administrator,” in express terms includes the intestate of these defendants; and, as we have seen, taking the bill to be true, that these complainants are by law entitled to an interest in the fund, they are entitled *96 to an account, unless there be something else in the case.
It is argued for the defendants again, that the order of the County Court of Robertson entering the settlement of the administrator Lowe of record, with the receipt of W. M. Carr, is a judgment of court of competent jurisdiction discharging their intestate from further liability. This can not be so. The settlement and payment appear to have been previously made, and the court only ordered it to be recorded as evidence. This was all they could do. Making the settlement is one thing: this is for the purpose of showing the administrator’s accounts, and the amount in his hands. This the clerk of the county court has the power to do, and the court orders it recorded. But paying out the money is a different thing. The administrator must pay to the right party at his peril, or he must have the judgment of a court upon the question in a proceeding regularly instituted for that purpose. See, as to undivided accounts and settlements, sections of the Code 2295 to 2310; as to distribution, 2311 and following, which show that making the settlement and distributing the fund are entirely different proceedings.
The effect of Lowe’s settlement has been discussed. It is said that it can not have the effect of prima faoie evidence in his favor, because there was no notice, and this is probably so; but this is not material, for it is conceded to be only prima faoie evidence, and the bill points out errors sufficient to entitle the complainants to have it retaken.
*97 It is again argued for the defendants, that notwithstanding the duties of the administrator may not be controlled by the order of his appointment, and notwithstanding the parties by law entitled may call the administrator here to an account, yet if before this is done the administrator here voluntarily pays over the surplus to the representative of the deceased in the State of his residence, for distribution there, this is a good payment and will protect him.
It is no doubt true that in such a case the surplus may be transferred to the other State for distribution, but this can only be done upon a bill filed for that purpose, to which all the parties in interest must be made parties.
It was so held in the case before referred to of Keaton v. Campbell, 2 Hum., 241, and in a well considered case, Parsons v. Hyman, 20 N. Y. Rep., 112, in which the question of transfer was held to be a matter of discretion in the court under all the circumstances, and this commends itself to our approval in view of the decisions of our courts and others, that the securities of the representatives in Arkansas would probably not be liable for any portion of the assets transferred from this State. See 2 Hum., 241; 3 Sneed, 55.
Of course we do not now decide that the payment made by Lowe to W. M. Carr, for Mrs. Elizabeth Carr does not discharge him to that amount. Prima facie it does not as to the interest of these complainants. But a state of facts in relation thereto may be disclosed by answer and proof, the effect of which we can .not now decide.
*98 Finally, it is argued that the complainants are barred by the statute of limitations. This argument is mainly based upon the statement in the bill, that the other children of Robert D. Carr are not made parties because their' rights to relief are barred by the statute of limitations, and upon this it is argued that they are all barred. This statement of the bill is a mere opinion as to the law, most probably the suggestion of counsel. There' is no statement of facts upon which the bar of the statute of limitations appears. In the present attitude of the case complainants cannot be repelled upon this ground. Conceding for the argument that this question may arise upon a demurrer, it does not appear from the facts stated that the complainants are barred.
As to W. Lowe he was an express trustee, and as to him no statute of limitation applies: Lafferty v. Turley 3 Sneed, 157. As to his representatives, whether they are protected by the statute in their favor, we can not now decide, as the facts upon which the question would arise are not stated. The case of Shute v. Wade, 5 Yerg., has no application. That was an action at law for the conversion of slaves. This is a bill in equity to charge the testator of defendants as an express trustee.
The decree of the chancellor will be reversed, the demurrer overruled, and the cause remanded for further proceedings.